# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| MARK DAVID JACKSON, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> CAROLYN COLVIN, ACTING § <br> COMMISSIONER of the SOCIAL § <br> SECURITY ADMINISTRATION, § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:16-CV-00124-KPJ |

## ORDER AND OPINION

On February 17, 2016, Plaintiff Mark David Jackson initiated this civil action pursuant to the Social Security Act (the "Act"), Section 405(g) for judicial review of the Commissioner's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the case was referred to the undersigned for all proceedings and the entry of judgment as a result of the foregoing consent of the parties (Dkt. 13). For the reasons stated herein, the Court finds the decision of the Commissioner is **REMANDED.**

## BACKGROUND

On January 27, 2014, Plaintiff filed an application for DIB under Title II of the Act, alleging an inability to work since February 22, 2012. *See* Transcript ("Tr.") at 123. After he was denied at the initial and reconsideration stages of review, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See id.* at 65-68, 70-76. Plaintiff attended an administrative hearing before ALJ Michael E. Finnie on June 3, 2015. *See id.* at 25-42. On September 21, 2015, the ALJ issued an unfavorable decision, finding Plaintiff "not disabled" at all relevant times. *See*

*id.* at 13-20. On November 17, 2015, Plaintiff requested review before the Appeals Council. *See id.* at 8.

On January 9, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g). *See id.* at 1-6. Plaintiff filed a Brief on June 9, 2016 (Dkt. 13). The Commissioner filed a Brief in Support of the Commissioner's Decision on August 8, 2016 (Dkt. 14).

## LEGAL STANDARD

Judicial review of the denial of disability benefits of the Act, 42 U.S.C. § 405(g), is limited to: (1) determining whether the decision is supported by substantial evidence in the record; and (2) whether the proper legal standards were used in evaluating the evidence. *See Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the court may not reweigh the evidence, try the issue *de novo,* nor substitute the court's judgment for the Commissioner's, even if the evidence goes against the Commissioner's decision. *See Bowling*, 36 F.3d at 435. Rather, the Commissioner is to decide conflicts in the evidence. *See Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A decision on the ultimate issue of whether the plaintiff is disabled, as defined in the Act, rests with the Commissioner. *See Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); SSR 96-5p, Fed. Reg. 34471 (July 2, 1996).

Substantial evidence requires more than a scintilla but less than a preponderance; there must be enough evidence that a reasonable mind would find it sufficient to support the decision. *See Pena v. Astrue*, 271 F. App'x 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *See Fraga v. Bowen*, 801 F.2d 1296, 1302 n.4 (5th Cir. 1987). The Commissioner's decision must be affirmed if supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). However, before the court may affirm the ALJ decision, the court must scrutinize the record and take into account anything that fairly detracts from the substantiality of the evidence supporting the Commissioner's findings. *See Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The court may remand: (1) for additional evidence if substantial evidence is lacking; or (2) upon a showing there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record previously. *See* 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

The plaintiff has the burden of proving a disability. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than twelve (12) months. *See* 42 U.S.C § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *See Villa*, 895 F.2d at 1022. If the Commissioner finds "disabled" or "not disabled" at any step of the sequential process, that ends the inquiry. *See id.*; *Bowling*, 36 F.3d at 435. At step one, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. At step two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At step three, the Commissioner must determine whether the claimant has an impairment, or combination of impairments, that meets or equals one of the listings in Appendix I. Prior to moving to step four, the Commissioner must determine the claimant's residual functional capacity ("RFC"), the most the claimant can do given her impairments, both severe and non-severe. At step four, the Commissioner must determine whether the claimant's impairments are severe enough to prevent her from performing her past relevant work. Finally, at step five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. *See* 20 C.F.R. §§ 416.920(b)-(f) and 404.1520(b)(1)(f). An affirmative answer at step one or a negative answer at steps two, four, or five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at step three, or an affirmative answer at steps four and five, creates a presumption of disability. *See id.* The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

**ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ made the following findings in his decision:

1. The claimant last met the insured status requirements of the Act on December 31, 2014.

2. The claimant did not engage in substantial gainful activity from February 22, 2012, the alleged onset date, through his date last insured of December 31, 2014 (20 C.F.R. § 404.1571, *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one (1) of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the ALJ found that, through the date last insured, the claimant had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), such that the claimant is able to lift and carry up to twenty (20) pounds occasionally and ten (10) pounds frequently, walk or stand six hours of an eight (8) hour workday; and sit for six (6) hours of an eight (8) hour workday.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on March 7, 1960, and was fifty-four (54) years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569(a)).

11. The claimant was not under a disability, as defined in the Act, at any time from February 22, 2012, the alleged onset date, through December 31, 2014, the date last insured (20 C.F.R. § 404.1520(g)).

*See* Tr. at 15-20.

The ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act through December 31, 2014. *See id.* at 20.

**ANALYSIS**

Plaintiff brings the present appeal based on the following contentions: (1) the ALJ erred by mechanically applying the Medical-Vocational Guidelines when Plaintiff's age presented a "borderline situation" without explanation at step five of the analysis; and (2) the ALJ erred in rejecting the opinion of Craig B. Lankford, M.D. without conducting the detailed analysis required by Section 404.1527(c). *See* Dkt. 13 at 1.

In making his findings, the ALJ stated Plaintiff was fifty-four (54) years old on the date last insured. *See* Tr. at 19. Based on this, the ALJ determined that Plaintiff should be classified as an "individual closely approaching advanced age." *See id.* Further, the ALJ gave little weight to Dr. Lankford's opinions, stating that Dr. Lankford failed to reference any objective clinical findings or narrative notes in support of his opinions and that Dr. Lankford's opinions were inconsistent with the medical evidence of record. *See id.* at 18. The ALJ also noted that Dr. Lankford's statement was recorded well after Plaintiff's date last insured of December 31, 2014. *See id.*

**I.   The ALJ's Application of the "Individual Closely Approaching Advanced Age" Category**

Plaintiff argues that the ALJ erred by mechanically applying the Medical-Vocational Guidelines. *See* Dkt. 13 at 10. Plaintiff was born on March 7, 1960, and was fifty-four (54) years old on the date last insured, December 31, 2014, less than three months away from turning fifty-five (55). *See id.* at 12. With respect to age, the ALJ noted that Plaintiff was "born on March 7,

1960 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured." *See* Tr. at 19.

At the fifth step, an ALJ considers relevant vocational factors, including age, when considering whether there is other work that a claimant can perform. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1563(a)(4)(v). The Commissioner's regulations set out three (3) age categories: (1) "younger person" for individuals under the age of fifty (50); (2) "closely approaching advanced age" for individuals between the ages of fifty (50) and fifty-four (54); and (3) "advanced age" for individuals age fifty-five (55) and older. *See* 20 C.F.R. § 404.1563(c), (d), (e). However, the regulations provide that:

> [the Commissioner] will not apply the age categories mechanically in a borderline situation. If [a claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's case].

20 C.F.R. §§ 404.1563(b), 416.963(b); *Application of the Medical-Vocational Guidelines in Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, Hearings, Appeals and Litigation Law Manual* (HALLEX), II-5-3-2, 2003 WL 25498826 (effective 1993).

Plaintiff argues the ALJ should not mechanically apply age categories. *See* Dkt. 13 at 10. Specifically, Plaintiff argues the ALJ applied the "closely approaching advanced age" category without considering that his age was within two months and seven days of attaining the higher age category, "person of advanced age." *See id.* Plaintiff maintains that, had the ALJ considered and applied the older age category, the Medical-Vocational Guidelines would have rendered Plaintiff categorically disabled. *See id.*

**A. The ALJ Was Required to Consider the "Person of Advanced Age" Category**

The term "borderline" is not specifically defined either by statute or by the governing regulation. *See Manning v. Colvin*, 2014 WL 266417, at *4 (N.D. Tex. Jan. 24, 2014) (citing *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (per curiam)). The regulations merely provide that the Commissioner will consider applying an older age category if the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant] is disabled." *See* 20 C.F.R. § 404.1563(b). SSR 83-10 states "[n]o fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach." *See Manning*, 2014 WL 266417, at *4 (citing SSR 83-10, 1983 WL 31251, at *8).

Courts have reached conflicting results when applying the qualification that a claimant be "within a few days to a few months" of reaching the older age category. *Compare, e.g., Phillips v. Astrue*, 671 F.3d 699 (holding that claimant within four months of fifty-fifth birthday at time of ALJ's decision was in borderline situation), *with Woods v. Chater*, 1996 WL 570490, at *5 (N.D. Cal. Sept. 27, 1996) (holding that claimant within four months of fifty-fifth birthday at time of ALJ's decision was not in borderline situation). In general, courts have declined to announce a bright-line rule for what constitutes "borderline" age. *See Manning*, 2014 WL 266417, at *4 (citing *Phillips*, 671 F.3d at 703). However, a growing number of courts appear to hold that a claimant within six (6) months of an older age category presents a borderline age situation. *See, e.g., Perez v. Colvin*, 2014 WL 5472438, at *5 (N.D. Tex. Oct. 29, 2014); *Ware v. Colvin*, 2014 WL 4999276, at *6 (W.D. Tex. Oct. 7, 2014); *Manning*, 2014 WL 266417, at *5; *Horsley v. Colvin*, 2014 WL 1213467, at *5 (N.D. Miss. Mar. 24, 2014); *Lewis v. Comm'r of Soc. Sec.*, 666 F.Supp.2d 730 730, 738 (E.D. Mich. 2009); *Gallagher v. Astrue*, 2009 WL

929923, at *6 (D.N.H. Apr. 3, 2009); *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1168 (W.D. Tenn. 2002).

The Fifth Circuit has not squarely addressed the meaning of "within a few days to a few months." *Manning*, 2014 WL 266417, at *4. The Fifth Circuit has repeatedly held, however, that the Commissioner has significant discretion when determining whether a situation is borderline. *See Stanridge-Salazar v. Massanari*, 254 F.3d 70, 2001 WL 502506, at *1 (5th Cir. Apr. 24, 2001) (per curiam); *Skinner v. Shalala*, 47 F.3d 424, 1995 WL 71092, at *5 (5th Cir. Jan. 25, 1995); *Harrell*, 862 F.2d at 479; *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987). The Fifth Circuit held the Commissioner's interpretation of her regulations should be given considerable deference in the absence of an obvious inconsistency between the interpretation and the language of the regulation in question. *See Harrell*, 862 F.2d at 479.

The Commissioner cites to *Harrell* and *Underwood* in support of her decision. *See* Dkt. 19 at 8. However, *Harrell* and *Underwood* are distinguishable from the current case. First, neither of these cases stand for the proposition that an ALJ has unfettered discretion to place a claimant in an age category. Further, the cases are factually distinguishable. In *Harrell*, the claimant turned forty-nine (49) at the time of the ALJ's decision and was nearly one (1) year away from the next older age category. *See Harrell*, 862 F.2d at 479. Additionally, the ultimate outcome in *Harrell* would not change had the claimant been categorized in the older age category. *See id.* In *Underwood*, the facts are similar: the claimant was ten months shy of his fifty-fifth birthday and evidence in the record showed that applying the older age category would not change the outcome. *See Underwood*, 828 F.2d at 1082-83. Here, Plaintiff maintains—and the Commissioner does not and cannot dispute—that had Plaintiff been evaluated as if in the

9

next older age category, he would have been deemed "disabled" under Medical-Vocational Rule 202.06.

The Commissioner is correct in that there is no requirement to automatically apply the higher age category when a claimant falls into the borderline age situation. To justify the use of the older age category, there must be additional adversities. *See Ware*, 2014 WL 4999276, at *6 (citing HALLEX II-5-3-2, 2003 WL 25498826). Some non-exclusive examples of additional vocational adversities include frequent postural limitations (where frequent means the claimant is limited to performing that activity one-third to two-thirds of an eight-hour workday), frequent stooping limitations for a claimant with a sedentary RFC, and no overhead reaching for a claimant with a sedentary RFC. *See* Dkt. 14, Ex. 1 at 22-23 (citing Program Operations Manual System, DI 25015.005, effective March 22, 2011 – March 24, 2016). These examples are not to be applied mechanically, and other adverse circumstances in individual cases may justify using a higher age category. *See id.* at 21.

The ALJ's RFC finding did not discuss the presence or absence of additional vocational adversities. The ALJ merely stated, broadly, that "the symptoms experienced by the claimant are limiting, but when compared with the total evidence, not severe enough to preclude all types of work." *See* Tr. at 19. At the time Plaintiff was last insured, Plaintiff was fifty-four (54) and nine months old, less than three months away from his fifty-fifth birthday; thus, the amount of additional adversity required to justify use of the older age category would be minimal. *See Ware*, 2014 WL 4999276, at *6 (citing HALLEX II-5-3-2, 2003 WL 25498826). Even if the amount of non-exertional vocational adversities exists in large number, the ALJ retains discretion in determining which age category to apply. *See Ware*, 2014 WL 4999276, at *7. The Commissioner argues that Plaintiff has not demonstrated the presence of any additional

vocational adversities. *See* Dkt. 14 at 6. However, "when a borderline age situation exists, [the ALJ] must explain [his/her] decision to use the next higher age category or [his/her] decision to use the claimant's chronological age and explain the specific factors supporting [their] determination." *See* Dkt. 14, Ex. 1 at 24 (Program Operations Manual System, DI 25015.005, effective March 22, 2011 – March 24, 2016). As additional vocational adversities are not to be considered mechanically or as an exclusive list, and can potentially include individual circumstances in a case, the ALJ needed to at least consider applying the older age category.

**B. The Record Lacks Evidence that the ALJ Considered the "Advanced Age" Category**

Plaintiff argues that the ALJ erred when he mechanically applied the lesser grid rule without considering whether a higher age classification would have been appropriate. *See* Dkt. 13 at 13. The Circuit Courts of Appeals and courts within the Fifth Circuit are split as to whether and what extent the ALJ's decision must explicitly acknowledge the borderline age situation. *See Manning*, 2014 WL 266417, at *6. The Sixth, Ninth, and Eleventh Circuits hold that an ALJ is not required to explain in his written decision whether he considered the borderline age situation. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399-403 (6th Cir. 2008) (nothing in the relevant statute or governing regulations require an ALJ to address the claimant's borderline age situation in his opinion); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071-72 & n.4 (9th Cir. 2010); *Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635-36 (11th Cir. 2007) (per curiam). However, the Third, Eight, and Tenth Circuits have taken the opposite view, holding that the ALJ is required to explain in his written decision whether he considered the borderline age situation. *See Daniels v. Apfel*, 154 F.3d 1129, 1134-36 (10th Cir. 1998) (placing a claimant

in an age category is a factual finding that must be supported by substantial evidence, and without it being mentioned in the ALJ's written decision, a reviewing court cannot meaningfully analyze the ruling under the substantial evidence standard); *Phillips v. Astrue*, 671 F.3d 699, 706-07 (8th Cir. 2012); *Lucas v. Barnhart*, 194 F. App'x 204, 208 (3d Cir. 2006). District courts in the Fifth Circuit have generally adopted a middle ground. They have rejected a *per se* requirement that the ALJ must always explain in his written decision whether he considered the borderline age issue, but they have held in cases where there is no explanation of the issue and there is an indication that the claimant might be considered disabled under a different guidelines rule, a remand is proper. *See Manning*, 2014 WL 266417, at *6.

This Court will follow the other courts in this Circuit's conclusion. *See Ware*, 2014 WL 4999276, at *9; *Manning*, 2014 WL 266417, at *6; *Horsley*, 2014 WL 1213467, at *4; *Stout v. Astrue*, 2012 WL 1020179, at *11 (E.D. La. Feb. 22, 2012). The Court rejects that in every case in which the claimant presents a borderline age situation, there is a *per se* requirement that an ALJ explain in his written decision whether he considered the borderline age issue; instead, the Court finds that whether such an explanation is necessary will be dependent upon the circumstances of the case.

Here, the September 21, 2015, decision states only Plaintiff's birth date of March 7, 1960, and that he was fifty-four (54) on the date last insured. *See* Tr. at 19. At the hearing held on June 3, 2015, Plaintiff told the ALJ he was fifty-five (55), and his attorney briefly stated that under a theory of the case, "medical vocational guidelines 201.14 prior to fifty-five (55), 201.06 after fifty-five (55)." *See id.* at 28. Such references to Plaintiff's age, in combination with the ALJ's lack of explanation when classifying Plaintiff, are insufficient to demonstrate the ALJ recognized or considered Plaintiff's borderline age situation as required by the regulations.

12

Thus, there is no evidence in the record the ALJ did so, and, thus, a remand is proper on this issue.

**II.     The ALJ's Weighing of the Opinion of Dr. Craig B. Lankford**

Plaintiff argues that the ALJ rejected the opinion of his treating specialist without good cause and without conducting the detailed analysis required by Section 404.1527(c). *See* Dkt. 13 at 13. Ordinarily, an ALJ should accord the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses, considerable weight in determining disability. *See Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). However, treating physician opinions are not conclusive, and an ALJ may reject them for good cause. *See id.* The Fifth Circuit has held an ALJ may reject a treating physician's opinions for good cause when the physician's reports are brief and conclusory or not supported by medically acceptable, clinical laboratory techniques. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must apply factors under the Act in determining the weight to give the opinion. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ must consider the following factors: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that the claimant may bring. *See* § 404.1527(c)(2)-(6). The issue of whether the claimant is disabled is left solely to the decision of the Commissioner. *See* § 404.1527(d). Medical opinions stating the claimant is disabled or whether an impairment meets or equals any impairment found in the Listing of

Impairments in Appendix 1 (*see* §§ 404.1545 and 404.1546) will not necessarily have an effect on the Commissioner's decision. *See id.*

The Commissioner contends that, though the ALJ did not provide a specific recitation of the factors, the ALJ's decision demonstrates that he did in fact consider the relevant factors in the context of his decision. *See* Dkt. 14 at 14. The Court agrees that the ALJ did narratively discuss Dr. Lankford's treatment of Plaintiff "from May 2012 to May 2015," touching on the length of the treatment relationship and a few dates at which Plaintiff was further examined. *See* Tr. at 17-18. Further, the ALJ noted the nature and extent of the treatment relationship, at least in part, in discussing diagnoses and treatments. *See id.* Plaintiff notes, and the ALJ's decision does not include, that Dr. Lankford treated Plaintiff on at least twelve (12) separate occasions. *See* Dkt. 13 at 17.

The Commissioner argues the ALJ considered Dr. Lankford's specialization in identifying him as a doctor at the Texas Back Institute. *See* Dkt. 14 at 15. Plaintiff points out that Dr. Lankford is actually a pain management specialist, which is a very relevant factor considering he opined on the limitations Plaintiff would experience as a result of his pain. *See* Dkt. 13 at 17.

The ALJ only discussed the factors of supportability and consistency in a conclusory dismissal. The ALJ stated that he considered Dr. Lankford's opinions, but gave them "little weight." *See* Tr. at 18. The ALJ asserted his reasons for this decision:

> Dr. Lankford failed to reference any objective clinical findings or narrative notes in support of his opinions and his opinions are inconsistent with the medical evidence of record. Furthermore, Dr. Lankford's statement was recorded well after [Plaintiff's] date last insured of December 31, 2014.

*See id.* Plaintiff contends Dr. Lankford did not fail to reference objective clinical findings, as he cited x-ray and MRI studies and evidence of muscle spasms and limited range of motion. *See*

14

Dkt. 13 at 15; Tr. at 456. The Commissioner agrees Dr. Lankford checked that x-ray findings, MRI studies, muscle spasms, and limited range of motion supported his opinions. *See* Dkt. 14 at 13. The Commissioner argues, however, that the ALJ did not commit reversible error because Plaintiff has not shown that Dr. Lankford's findings support disabling limitations and the Commissioner calls into question Dr. Lankford's findings. *See id.* Regardless, the Court finds the ALJ was incorrect in claiming that Dr. Lankford failed to reference any objective clinical findings in support of his opinions.

Plaintiff also notes that the ALJ provides no analysis regarding the blanket assertion that Dr. Lankford's opinions are "inconsistent with the medical evidence of record." *See* Dkt. 13 at 15. The Commissioner counters that, while the ALJ did not expressly identify the inconsistent evidence in the same paragraph in which he assigned "little weight" to Dr. Lankford's opinions, he discussed inconsistent evidence in other parts of the decision. *See* Dkt. 14 at 12. The Commissioner cites observations by the ALJ calling into question Plaintiff's credibility and assertions that Plaintiff exhibited normal strength, normal and independent gait, and straight leg raising was negative. *See id.*; Tr. at 18. These statements describe a weighing of various pieces of evidence, but do not address Plaintiff's concern—that the ALJ did not present a comparison between Dr. Lankford's opinions and inconsistent medical evidence of record. The Court finds that the ALJ did not identify the particular medical evidence of record he believed was inconsistent with Dr. Lankford's opinions in the paragraph labeling his opinions of "little weight" or elsewhere in his decision.

Plaintiff argues that the ALJ's assertion that Dr. Lankford's statement was recorded well after [Plaintiff's] date last insured of December 31, 2014, is unavailing as the Fifth Circuit recognizes post-date-last-insured medical evidence is relevant "because it may bear upon the

15

severity of the claimant's condition before the expiration of his or her insured status," particularly here, wherein Dr. Lankford had treated Plaintiff since May of 2012, well before the date last insured. *See Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). Once again, the Commissioner argues that any error the ALJ made in this regard is harmless, in this case because the ALJ cited other reasons for assigning little weight to Dr. Lankford's opinions. *See* Dkt. 14 at 12. The Court finds this argument unconvincing, as the other reasons the ALJ cited for assigning little weight to the opinions are unsupported.

The Court finds, in summary, that the ALJ's stated reasons for giving little weight to Dr. Langford's opinions were, in part, incorrect (regarding citation to clinical findings in support), in part, mistaken (regarding the relevance of post-date-last-insured medical evidence), and wholly unsupported by analysis or reasoning. The ALJ did not adequately analyze the regulatory factors, considering several in conclusory fashion without analysis and others in a manner so limited as to frustrate the purpose of considering the factors at all. For example, the ALJ listed a handful of particular examinations over a three-year period, indicating some recognition of frequency, but failed to specify the actual frequency, which was at least twelve interactions in that three-year span. Additionally, characterizing Craig Lankford as a doctor who works at Texas Back Institute does not actually engage with his medical specialization in a meaningful manner where Dr. Lankford's specialization is actually much more specific and particularly relevant to the opinions he presented. Thus, the Commissioner's denial of benefits under Title II of the Act was based on incorrect legal standards in part, and moreover, was not supported by substantial evidence.

The issue of whether the plaintiff is disabled, as defined in the Act, ultimately rests with the Commissioner. *See Newton*, 209 F.3d at 455-56. The ALJ, however, did not show good cause

to discount Dr. Lankford's opinion, and remand is required for review in proper accordance with 20 C.F.R. § 404.1527(c).

## CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's final decision be **REMANDED** pursuant to 42 U.S.C. § 405(g). The Court finds that Plaintiff's age presented a "borderline" situation and the ALJ should have considered applying the older age category. The Court remands the case to the ALJ to reconsider whether application of the higher age category is appropriate.

Further, the ALJ failed to demonstrate good cause for rejecting Dr. Craig B. Lankford's opinions, and the Court remands the case to the ALJ to consider whether greater weight should be given to Dr. Lankford's opinions.

It is **ORDERED** that this matter be closed on the Court's docket.

**It is SO ORDERED.**

**SIGNED this 6th day of March, 2017.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE